IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RONALD D. KAISEN,** <br> **Plaintiff,** <br><br> v. <br><br> **TD BANK, N.A.,** <br> **Defendant.** | **CIVIL ACTION** <br><br><br><br> **NO. 18-5504** |

## Memorandum Opinion

Plaintiff Ronald D. Kaisen brings this suit against Defendant TD Bank, N.A., alleging that Defendant's foreclosure on Plaintiff's properties violated various state-law provisions. Specifically, Plaintiff alleges that Defendant: (1) failed to comply with Pennsylvania's Deficiency Judgment Act, 42 Pa. C.S.A. § 8103 ("DJA"); (2) converted funds from the foreclosure sale to which Plaintiff was entitled; and, (3) breached its mortgage contract with Plaintiff. Defendant now moves both to dismiss Plaintiff's claims, and strike the pleadings. For the reasons that follow, Defendant's motion to dismiss will be granted in part and denied in part, and the motion to strike will be denied.

**I. Background[1]**

This case concerns two loans made by Defendant's predecessor in interest, Commerce Bank, to Plaintiff—one in 2002 and one in 2005.[2] The first loan ("Loan One") was originally in the amount of $200,000, but by August of 2007 had been amended several times such that the amount owed was $365,000. The second loan ("Loan Two") was in the amount of $175,000.

As security for the loans, Plaintiff executed mortgages on various Philadelphia properties

---

[1] The following facts come from Plaintiff's complaint and the exhibits attached thereto as well as the exhibits attached to Defendant's motion to dismiss. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) ("In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents.").

[2] Plaintiff's ex-wife was also an original party to the loans. However, she declared bankruptcy and was discharged from all obligations to Defendant.

that he owned. For Loan One, Plaintiff executed mortgages on four such properties: 3421 Indian Queen Lane ("Indian Queen Property"); 3810 Manayunk Ave. ("Manayunk Property"); 2952 Kensington Ave. ("Kensington Property"); and, 105 Rochelle Ave. ("Rochelle Property"). For Loan Two, Plaintiff executed a mortgage only on the Rochelle Property.

Loans One and Two, however, were not the only mortgages on the Philadelphia properties. Plaintiff also took out additional loans from other creditors, and used the Philadelphia properties as collateral for those loans as well. One such loan is relevant here: at some point, Plaintiff took out a loan from PNC Bank using the Manayunk Property as security. PNC's lien on the Manayunk Property was senior to that held by Defendant.

Ultimately, Plaintiff failed to make timely payments and defaulted on Defendant's loans. On February 8, 2012, Defendant filed foreclosure complaints in state court on the Indian Queen Property, Manayunk Property, and Rochelle Property. On April 17, 2012, Defendant obtained judgments against Plaintiff in the amount of $364,652.19 on Loan One and $163,368.57 on Loan Two, for a total of $528,020.76.

In 2013, Defendant foreclosed on the Indian Queen Property and bought the property at a sheriff's sale. Defendant then filed a petition to fix fair value on that property. On June 12, 2014, a state court fixed the fair market value of the Indian Queen Property at $160,000.[3] In September 2014, PNC Bank foreclosed on the Manayunk Property. Defendant purchased the property at the sheriff's sale, but, unlike with the Indian Queen Property, did not file a petition to fix fair value on the Manayunk Property.

On January 26, 2017, Defendant filed a writ of execution in the amount of $270,189.03 in

---

[3] The state court also entered a stipulated deficiency judgment of $272,080.45, which provided that Plaintiff was "released from further judgment proceedings in the above-captioned matter over and above the amount of the deficiency judgment, except for ongoing interest, attorneys' fees, and costs[.]" The parties dispute whether the release applied to both loans (as Plaintiff contends) or only to Loan One (as Defendant contends). For the reasons below, however, the Court need not resolve that dispute in ruling on Defendant's motions.

its foreclosure action on the Rochelle Property. On April 4, 2017, Defendant sold the Rochelle Property at a sheriff's sale to a third party for $355,000, without distributing any of the proceeds from the sale to Plaintiff.

On November 28, 2018, Plaintiff filed the instant action in state court, alleging: (1) violation of the DJA, (2) common law conversion, and (3) breach of contract. Defendant timely removed the action to federal court. Presently before the Court are Defendant's motions to dismiss and to strike.

## II. Discussion

### A. Motion to Dismiss

All three of Plaintiff's claims turn on the same allegation: during the foreclosure procedures on his properties, Defendant unlawfully withheld from Plaintiff the proceeds from the sale of the Rochelle Property. Plaintiff's three causes of action—breach of the DJA, conversion, and breach of contract—are, in effect, three separate theories as to why he is entitled to those proceeds. In evaluating Defendant's motion to dismiss, the issue is whether the factual allegations make out "a plausible claim for relief" for each claim. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ("In analyzing a motion to dismiss, legal conclusions are disregarded, well-pleaded factual allegations are taken as true, and a determination is made as to whether those facts state a plausible claim for relief.") (internal quotation marks omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

### 1. Deficiency Judgment Act Claim

The Pennsylvania legislature enacted the DJA "to remedy a practice prevalent among

3

judgment creditors during the Great Depression," *First Fed. Sav. and Loan Ass'n of Carnegie v. Keisling,* 746 A.2d 1150, 1155 (Pa. Super. 2000), where "the mortgagee . . . would purchase the mortgaged property for less than fair market value, usually for cost, and then reduce the debt only by the purchase price," *Fid. Fed. Sav. & Loan Ass'n v. Capponi*, 684 A.2d 580, 586 (Pa. Super. 1996). That is, prior to the enactment of the DJA, "the judgment creditor often recovered the property *and* the full amount of the debt." *Id.* (emphasis in original).

The DJA addressed this issue by requiring that:

> Whenever any real property is sold . . . to the judgment creditor in execution proceedings and the price for which such property has been sold is not sufficient to satisfy the amount of the judgment . . . and the judgment creditor seeks to collect the balance due on said judgment . . . the judgment creditor shall petition the court to fix the fair market value of the real property sold.

42 Pa. C.S.A. § 8103(a). The judgment creditor has six months to file a petition to fix the fair market value, *id.* § 8103(d), and must file the petition "as a supplementary proceeding in the matter in which the judgment was entered," *id.* § 8103(a); *Home Sav. & Loan Co. of Youngstown, Ohio v. Irongate Ventures, LLC*, 19 A.3d 1074, 1078 (Pa. Super. 2011) (observing that the statute defines "a supplementary proceeding in the matter in which the judgment was entered" to be "the matter in which 'real property is sold . . . to the judgment creditor in execution proceedings'"). Once a judgment creditor has filed the petition and a fair market value has been fixed, "the judgment creditor may proceed by appropriate proceedings to collect the balance of the debt." 42 Pa.C.S.A §8103(c)(4).

If, however, the judgment creditor fails to file a petition in a timely manner, then:

> the debtor . . . may file a petition . . . setting forth the fact of the sale, and that no petition has been filed within [six months] to fix the fair market value of the property sold, whereupon the court, after notice as prescribed by general rule, and being satisfied of such facts, shall direct the clerk to mark the judgment satisfied, released and discharged.

4

*Id.* § 8103(d). A judgment creditor's "[f]ailure to file a petition within the time period creates an irrebuttable presumption that the creditor was paid in full in kind." *McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 509 (3d Cir. 1997). All the debtor must do to take advantage of the irrebuttable presumption is file a petition "as a supplementary proceeding in the matter in which the judgment was entered, in the court having jurisdiction." 42 Pa. C.S.A. § 8103(d).

Plaintiff contends that Defendant's failure to file a petition to fix fair market value after buying the Manayunk Property discharged Plaintiff from any outstanding liability to Defendant. Thus, according to Plaintiff, Defendant lacked the authority to sell the Rochelle Property—much less retain the proceeds of that sale—because Plaintiff was no longer liable to Defendant. Plaintiff's DJA claim fails, however, because Defendant had no obligation under the DJA to file a petition to fix fair value on the Manayunk Property.

The DJA provides that "the judgment creditor shall petition the court to fix the fair market value," whenever "any real property is sold . . . to the judgment creditor in execution proceedings," 42 Pa. C.S.A. § 8103(d). Thus, a petition must be filed only when a "judgment creditor" purchases the property—a third-party purchaser need not do so. The DJA defines "judgment creditor" as "[t]he holder of the judgment which was enforced by the execution proceedings." *Id.* § 8103(g). Although a junior lienholder on the Manayunk Property, Defendant was not a "judgment creditor" for purposes of the DJA because it was not "the holder of the judgment which was enforced by the execution proceedings." Rather, PNC—as the creditor that initiated the foreclosure and sheriff's sale to enforce its senior lien on the Manayunk Property—was the "the holder of the judgment which was enforced by the execution proceedings." Indeed, Defendant was not even a party to the "execution proceedings" on the Manayunk Property. For the purposes of the DJA, Defendant was, in effect, a third-party

5

purchaser of the Manayunk Property. Accordingly, Defendant was not "a judgment creditor" for the purposes of the Manayunk Property, and thus did not need to file a petition to fix the fair market value for that property. Because Defendant did not violate the DJA in relation to the Manayunk Property, Plaintiff's DJA claim will be dismissed.[4]

### 2. Conversion Claim

Plaintiff next contends that he was entitled to some or all of the proceeds from Defendant's sale of the Rochelle Property, and Defendant unlawfully converted those funds by withholding them. Under Pennsylvania law, "[c]onversion is the deprivation of another's right of property in, or use or possession of, a chattel, without the owner's consent and without lawful justification." *Shonberger v. Oswell*, 530 A.2d 112, 114 (Pa. Super. 1987).

Here, the property allegedly subject to conversion was the proceeds from the sale of the Rochelle Property. *Id.* ("Money may be the subject of conversion"). Generally, "[a] defaulting mortgagor of land . . . has the right to receive from the proceeds of the sale of the mortgaged land the amount, if any, in excess of the mortgage debt." *In re Evergreen Mem'l Park Ass'n*, 308 F.2d 65, 67 (3d Cir. 1982) (citations omitted); *see also In re Sheriff's Excess Proceeds Litig.*, 98 A.3d 706, 713 n.2 (Pa. Commw. 2014) ("When a foreclosure sale generates proceeds in excess of existing tax liens and costs, [Pennsylvania Rule of Civil Procedure 3136] requires the Sheriff to distribute the excess proceeds to the former property owner . . .").

Plaintiff alleges that Defendant sold the Rochelle Property for $355,000 and distributed none of the proceeds to him. According to the writ of execution, Plaintiff owed only $270,189.03—an amount several thousand dollars below the eventual sales price of the Rochelle

---

[4] Accordingly, the Court need not reach the underlying issue—not briefed by the parties—of whether the DJA provides a private cause of action of the type that Plaintiff pleaded in his complaint. *See Estate of Witthoeft v. Kiskaddon*, 733 A.2d 623, 626 (Pa. 1999) (laying out a three-prong test to determine whether a private remedy is implicit in a statute not expressly providing one).

6

Property.[5]  Plaintiff, as "[the] defaulting mortgagor[,] . . . ha[d] the right to receive from the proceeds of the sale of the mortgaged land the amount . . . in excess of the mortgage debt." *In re Evergreen Mem'l Park Ass'n*, 308 F.2d at 67.  Defendant's failure to distribute those surplus proceeds to Plaintiff amounts to a "deprivation" of Plaintiff's "right of property . . . without [his] consent and without lawful justification."  *Shonberger*, 530 A.2d at 114.

Defendant argues, however, that the conversion claim should be dismissed based on the gist of the action doctrine.  That doctrine "maintains the conceptional distinction between breach of contract claims and tort claims," and "precludes plaintiffs from recasting ordinary breach of contract claims as tort claims."  *McShea v. City of Philadelphia*, 995 A.2d 334, 339 (Pa. 2010).  "The critical conceptual distinction between a breach of contract claim and a tort claim is that the former arises out of 'breaches of duties imposed by mutual consensus agreements between particular individuals,' while the latter arises out of 'breaches of duties imposed by law as a matter of social policy.'"  *Erie Ins. Exch. v. Abbott Furnace Co.*, 972 A.2d 1232, 1238 (Pa. Super. 2009) (quoting *Reardon v. Allegheny College*, 926 A.2d 477, 486-87 (Pa. Super. 2007)).  In the context of a claim for conversion, "a party cannot prevail . . . when the pleadings reveal merely a damage claim for breach of contract."  *Turuvekere v. ContinuServe, LLC*, 2012 WL 5961957, at *3 (E.D. Pa. Nov. 28, 2012) (applying Pennsylvania law) (internal citations omitted).  However, "the mere existence of a contract between the parties does not automatically foreclose the parties from raising a tort action."  *Id.*

Defendant argues that Plaintiff's conversion claim should be dismissed under the gist of the action doctrine because the claim "arise[s] directly from the 'balance due'" provision of the loans, and thus the tort claim is "grounded in a duty addressed" in the loan agreements.

---

[5] Plaintiff contends that he owed even less than that.  The Court, however, need not resolve this dispute because, even crediting Defendant's statement of the amount owed, Plaintiff has alleged sufficient facts to support a conversion claim.

Defendant's argument is unavailing. While the amount Plaintiff is entitled to from the sheriff's sale depends in part on the terms of the loan agreements, Defendant's duty to distribute excessive proceeds—whatever those proceeds may be—is one "imposed by law as a matter of social policy," *Reardon*, 926 A.2d at 486-87; *see also In re Sheriff's Excess Proceeds Litig.*, 98 A.3d at 713 n.2 (noting that excess proceeds must be distributed to the former property owner because "[*Pennsylvania Rule of Civil Procedure 3136*] requires" it) (emphasis added). Indeed, excess proceeds from a sheriff's sale are, by definition, "surplus" to the obligations imposed by a loan agreement. *W. Sav. Fund Soc'y v. Devlin*, 61 Pa. D. & C.2d 702, 707 (Pa. Com. Pl. 1973). And Defendant fails to point to any language in the loan agreement evidencing "duties imposed by mutual consensus agreements between [the parties]," *Reardon*, 926 A.2d at 486-87, concerning the distribution of excess funds following a sheriff's sale. Accordingly, Plaintiff's "right to receive from the proceeds of the sale of the mortgaged land the amount . . . in excess of the mortgage debt," *In re Evergreen Mem'l Park Ass'n*, 308 F.2d at 67, is not "grounded" in the contracts between the parties; instead, the right sounds in tort law, the violation of which may be pursued through a common law action for conversion.

### 3. Breach of Contract

Finally, Plaintiff brings a claim for breach of contract, alleging that Defendant's failure to distribute the excess proceeds from the sale of the Rochelle Property constitutes a breach of contract. "It is well established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and, (3) resultant damages." *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.,* 137 A.3d 1247, 1258 (Pa. 2016). The interpretation of a contract is a question of law. *Rourke v. Pa. Nat. Mut. Cas. Ins. Co.*, 116 A.3d 87, 91 (Pa. Super.

8

2015).

Plaintiff's breach of contract claim fails because, as discussed above, the loan agreements do not impose an obligation on Defendant to distribute excess proceeds from a sheriff's sale. Plaintiff fails to point to any contractual language creating a duty to that effect. The only contractual language Plaintiff cites is a provision that provides: "If Borrower pays all the indebtedness when due . . . Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage." That duty, however, is not implicated here because, as Plaintiff acknowledges, he did not "pay all the indebtedness when due," and thus did not trigger Defendant's obligation to mark the loan as satisfied. Simply put, there is no "dut[y] imposed by mutual consensus agreement[] between [the parties]," *Reardon*, 926 A.2d at 486-87, concerning the distribution of excess funds following a sheriff's sale. Accordingly, Defendant did not breach a contractual duty owed to Plaintiff. The breach of contract claim must therefore fail.

### B. Motion to Strike

Rule 12(f) provides that "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matters." *McInerney v. Moyer Lumber & Hardware,* 244 F. Supp.2d 393, 402 (E.D. Pa. 2002). A motion to strike is "not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." *Id.*

Defendant moves to strike an exhibit attached to Plaintiff's complaint on the ground that the exhibit is a settlement document, which renders it inadmissible pursuant to Federal Rule of Evidence 408. Rule 408, however, "is a rule of evidence and does not govern pleadings." *BTG*

*Int'l Inc. v. Bioactive Labs.*, 2016 WL 3519712, at *11 (E.D. Pa. June 28, 2016) (internal quotation marks omitted). Even assuming that the exhibit "fall[s] within the scope of 408, the court declines to apply the rule [of evidence] at this juncture," as "such argument must be resolved at later stages of litigation." *Horse Soldier, LLC v. Tharpe*, 2014 WL 5312823, at *7 (E.D. Pa. Oct. 17, 2014); *see also BTG Int'l Inc.*, 2016 WL 3519712, at *11 ("[E]ven if the Proposed Settlement were inadmissible under F.R.E. 408, it is not so irrelevant as to warrant striking any part of [BTG's] complaint.") (internal quotation marks omitted). While other courts within this District have reached a contrary result, *see, e.g.*, *Ciolli v. Iravani*, 625 F. Supp.2d 276, 284 (E.D. Pa. 2009), the Court will follow the lead of those that have "held that it is inappropriate to strike settlement material [when] such allegations are not 'immaterial, impertinent [or] scandalous.'" *BTG Int'l Inc.*, 2016 WL 3519712, at *11; *Horse Soldier, LLC*, 2014 WL 5312823, at *8; *Providence Town Ctr. LP v. Raymours Furniture Co.*, 2009 WL 3821935, at *5 (E.D. Pa. Nov. 13, 2009).

    An appropriate order follows.

**February 11, 2019**　　　　　　　　　　　　　**BY THE COURT:**

　　　　　　　　　　　　　　　　　　　　　　　**/S/Wendy Beetlestone, J.**

　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　**WENDY BEETLESTONE, J.**